**Francis E. BURTON, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HERSHEY AUTOMATIC), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 23, 1998.
Decided April 28, 1998.

James G. Gault, Bechtelsville, for petitioner.

Christian A. Davis, Philadelphia, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Francis Burton (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board), and presents the issue of when, and under what circumstances (*i.e.,* the measure of proof), a partially disabled claimant may establish a greater degree of partial disability, thereby entitling him to greater compensation benefits. The Board had affirmed the order of a Workers' Compensation Judge (WCJ) which had denied Claimant's petition to reinstate his benefits from partial to total disability.

Claimant was employed by Hershey Automatic Corporation (Employer) as a vending sales clerk when, on June 21, 1990,[1] while at work, he sustained a back injury when he fell on a flight of steps while delivering supplies. Although he went to work the next day, he left work early to receive medical treatment, and after that time he did not return to work because of his injury. On August 2, 1990, a notice of compensation payable was issued which granted Claimant temporary total disability benefits in the amount of $271.49 per week.

On May 2, 1991, Claimant began receiving treatment from Dr. Evan S. Kovalsky, a board-certified orthopedic surgeon. On May 24, 1991, he underwent back surgery and had plates and pedicle screws implanted into his back. On December 31, 1991, Dr. Kovalsky placed several physical restrictions on Claimant's return to work, specifically, he could lift 0 to 10 pounds frequently, 11 to 25 pounds occasionally, and never lift more than 26 pounds. Dr. Kovalsky's restrictions also included a return to light-duty work only, as well as a maximum of 4 to 6 hours of work per day.

On March 9, 1992, in conjunction with a commutation petition, the parties entered into a stipulation in which it was agreed that, as of that date, Claimant had an earning capacity of $272.90 per week, based on part-time work which was available, resulting in a loss of earnings of $134.33 per week. Therefore, Claimant was entitled to partial disability benefits at the rate of $90 per week for five hundred weeks, which was commuted to a lump-sum payment of $45,000, less $5,000 for attorney fees.

Later that month, Claimant began part-time work as a deli clerk at a Shop–N–Bag supermarket. His duties consisted mainly of slicing lunchmeat and included some lifting, but he only worked approximately 20 hours per week. However, Claimant quit this job after only five weeks because he could not perform the required lifting and he could not stand for extended periods of time; he also continued to experience a low back ache and numbness in his toes.

In August of 1992, Claimant began working at Frank and Eddie's, a delicatessen owned by his brother. Claimant worked 20 hours a week for 3 months delivering boxes of sandwiches weighing four to five pounds.

In October of 1992, Claimant left his job at the deli to begin his own catering business. Claimant worked approximately 20 hours a week transporting, assembling and disassembling equipment and supplies at various catering jobs that his business received. But that business was also abandoned in October

---

1. Claimant testified and the WCJ found as fact that the injury occurred on June 21, 1990. However, the Board identified the date of injury as June 20, 1990.

of 1993 when Claimant could no longer handle the physical exertion required for the job.

In December of 1993, Claimant received further treatment from Dr. Kovalsky. In conjunction with his treatment of Claimant, Dr. Kovalsky placed further restrictions on Claimant's physical exertion. Specifically, Claimant was only permitted to lift at any time a maximum of 10 pounds, and Dr. Kovalsky reduced Claimant's maximum hours of work per day to 4. In addition, Dr. Kovalsky restricted Claimant to "sedentary" rather than "light-duty" work.[2]

On January 18, 1994, Claimant filed a petition to reinstate compensation benefits, alleging that his disability status had changed from partial to total. Employer denied the allegations in the petition, and hearings were scheduled before a WCJ beginning on April 14, 1994.

At the hearings, Claimant testified concerning his original injury, as well as his multiple attempts to find employment within his physical capabilities. In addition, Claimant presented the deposition testimony of Dr. Kovalsky. Dr. Kovalsky explained that, after the initial hearings, Claimant underwent additional treatment for his back problem. This treatment included the use of a TENS unit[3] and facet blocks[4] to relieve the pain in Claimant's back. Dr. Kovalsky also documented the deterioration of Claimant's back which resulted in an increase in the medical restrictions that Dr. Kovalsky placed on Claimant's return to any form of work. Specifically, Dr. Kovalsky noted that, following his surgery in May of 1991, Claimant could work between 4 and 6 hours per day, but he was never to lift more than 26 pounds. Dr. Kovalsky testified that Claimant's physical condition deteriorated to the point where, by, December of 1993, Claimant could only work a *maximum* of 4 hours per day, and should never lift more than 10 pounds.

In opposition to Claimant's petition, Employer presented the deposition testimony of Dr. William H. Spellman, a board-certified orthopedic surgeon. Based on his examination of Claimant, Dr. Spellman opined that Claimant could perform light-duty work without restrictions as to the maximum amount of hours that Claimant could work each day.

On September 13, 1995, the WCJ issued his findings of fact and conclusions of law. The WCJ found that, during the period from May of 1991 to December of 1993, Claimant's physical condition had deteriorated and, as a result, his work capabilities decreased to the point that he could perform only sedentary work. In making his findings, the WCJ found the testimony of both Claimant and Dr. Kovalsky to be credible and persuasive, and the WCJ rejected the testimony of Dr. Spellman wherever such testimony was inconsistent with that of Dr. Kovalsky. However, the WCJ concluded that Claimant did not meet his burden of demonstrating that his disability had increased from partial to total or from one degree of partial disability to a greater degree of partial disability. Specifically, the WCJ noted that Claimant failed to present any evidence of the *absence* of job availability in the sedentary occupational category, and, thus, any finding of further loss of earning power was not possible.[5] Therefore, the WCJ denied Claimant's petition to reinstate compensation.

Claimant appealed the decision to the Board, which affirmed the decision of the WCJ. In doing so, the Board, relying upon *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), *Meden v. Workmen's Compensation Appeal Board (Bethenergy*

---

2. *See infra* Footnote 7.

3. A TENS unit is a small device attached to a patient's body which is designed to send electrical impulses to block the neural transmission of pain in an area.

4. A facet block is an injection of an anti-inflammatory steroid into the facet joint of the spine designed to relieve pain in that area.

5. Specifically in finding of fact number 17, the WCJ stated:

> Claimant did not provide any evidence whatsoever to show the extent to which work in the sedentary occupational category is unavailable. Therefore, no Findings of Fact can be made with regard to Claimant's loss of earning power.

(WCJ Decision at 7.)

*Mines, Inc.),* 167 Pa.Cmwlth. 68, 647 A.2d 620 (1994), *petition for allowance of appeal denied,* 540 Pa. 624, 657 A.2d 494 (1995), and *Volk v. Workmen's Compensation Appeal Board (Consolidation Coal Co.),* 167 Pa. Cmwlth. 75, 647 A.2d 624 (1994), concluded that, although Claimant established that his physical condition had deteriorated, the Claimant had not established that he was now totally disabled such that it adversely affected his earning power to the point that he could not perform sedentary work. The Board noted that Claimant's own doctor, Dr. Kovalsky, testified to the contrary. Additionally, the Board did not examine whether Claimant demonstrated an increase in disability from one degree of partial disability to a greater degree of partial disability.

On appeal to this Court,[6] Claimant argues that he satisfied his burden of demonstrating that his disability subsequently increased following the initial award of partial disability benefits in March of 1992.

Section 413 of the Workers' Compensation Act[7] (Act), 77 P.S. § 772, provides as follows:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased. . . .

77 P.S. § 772.

In *Meden,* the claimant, after working thirty-three years in the employer's coal mine, contracted coal workers' pneumoconiosis. Claimant began receiving partial disability benefits at the rate of $227.00 per week beginning on February 24, 1981. Ten years and two months later, on April 8, 1991, following the exhaustion of the 500 weeks of partial disability, the claimant filed for a reinstatement of *total* disability benefits. Al-

though Claimant testified and presented evidence regarding the deterioration of his physical condition, he presented no evidence illustrating the effect of the deterioration of his physical condition on his earning power. Specifically, the claimant only established that he still remained only partially disabled and offered no evidence of an increased loss of earning power, *i.e.,* further disability. Consequently, the WCJ denied the claimant's petition and that decision was affirmed by the Board.

On appeal to this Court, the claimant asserted that the establishment of a worsening of his physical condition, by itself, was sufficient to shift the burden to employer to demonstrate job availability. In essence, the claimant asserted simply that a worsening of his medical condition was tantamount to a loss of earning power. However, this Court affirmed the order of the Board, holding that "simply arguing that a claimant's physical condition has changed without presenting evidence of its effect on his ability to work at his light duty job cannot satisfy a claimant's burden of proof." *Id.* 647 A.2d at 623. Therefore, because Claimant offered no evidence that his disability increased, he succeeded in establishing only a continuing partial disability of the same degree as his original partial disability. Since the claimant had already exhausted his 500 weeks of eligibility for partial disability benefits, at that point in time he would have been eligible only for total disability benefits. Therefore, because the claimant did not demonstrate that his earning power was effected by the deterioration of his medical condition, we affirmed the order of the Board denying him total disability benefits.

In *Volk,* we examined a similar issue in which a miner sought to have his disability status modified from partial to *total* disability, but in the *Volk* case Volk still had approximately 123 weeks of eligibility remaining for partial disability benefits. Similarly to *Meden,* Volk merely presented evidence of the

6. Our standard of review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth.1996).

7. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

deterioration of his physical condition and did not establish any corresponding effect on his earning power; rather, he only established that he was disabled from his time-of-injury job. Without inquiring into the availability of jobs within the claimant's new physical restrictions, the WCJ found that the claimant was totally disabled from his *time-of-injury* job and awarded total disability benefits. The Board reversed, holding that the claimant did not establish that he could not perform the alternate employment which the parties had stipulated was available to him. In affirming the Board, we stated that

> [a] claimant is not partially or totally disabled based on his physical condition, but rather on his ability to work and the availability of employment. If a Claimant cannot perform his pre-injury job, and has a continuing physical impairment as a result of the work injury, he is totally disabled if there is no work available. He is partially disabled if either, he is working at a lighter lesser paying job or he could be working at a lighter lesser paying job and such work is available.

*Id.* at 627.

We held, therefore, that a claimant seeking to have his benefits modified from partial to total disability or from one degree of partial to a greater degree of partial disability "must prove that his physical disability has changed *and* that he is unable to perform his light duty job, and, therefore, that he has suffered a further loss of earning power." *Id.* at 628 (emphasis added).

Although the outcome in both *Meden* and *Volk* was identical, the key distinction between those two cases is the fact that, in *Meden,* the claimant had exhausted his 500 weeks of eligibility for partial disability benefits; therefore, to establish an increase in disability, he had no other option but to establish that the decline in his physical condition reduced his earning power to zero, rendering him totally disabled. On the other hand, Volk still had 123 weeks of eligibility for partial disability remaining when he applied for a reinstatement of total disability *benefits,* and he could have prevailed on his petition by establishing that the deterioration of his physical condition resulted in either total disability **or** that his earning power, although not reduced to zero, was now reduced more than it had been at the time that the WCJ originally awarded him partial disability benefits, resulting in a greater degree of partial disability. If Volk **had** made such a showing, he would have demonstrated that he was then presently partially disabled to a greater degree than he had been at the time he was originally awarded partial disability benefits and could have received partial disability benefits at a higher rate for the remainder of the 123 weeks. Because Volk presented **no** evidence regarding the impact of his physical condition on his earning power, we affirmed the denial of his reinstatement petition.

The case presently before us is identical to *Volk* in that, at the time that Claimant applied for reinstatement of total disability benefits, he still had approximately 403 weeks of partial disability eligibility remaining. Therefore, like Volk, he could prevail by showing that the deterioration of his physical condition has reduced his earning power to zero, *i.e.,* total disability, **or** that his earning power has declined further from the date that he was originally awarded partial disability benefits, *i.e.,* greater partial disability. Unlike *Volk,* in this appeal the Claimant has met and has overcome that burden.

The testimony of Claimant and Dr. Kovalsky demonstrates that Claimant's physical condition deteriorated following the May 1991 surgery. Therefore, our inquiry turns to whether Claimant also established that his earning power was further effected by this continuing deterioration in his physical condition. Dr. Kovalsky testified that the deterioration of Claimant's physical condition resulted in more medical restrictions placed on his return to work. This included a reduction in the maximum amount of hours that Claimant could work, as well as a reduction in the amount of weight that Claimant could lift. In addition, Claimant left two of the light-duty positions that he had tried because he was physically unable to perform his duties. Furthermore, Dr. Kovalsky reduced the general classification of any of Claimant's work

from "light duty" to "sedentary."[8] This reduction in classification necessarily eliminated the three positions that Claimant had previously performed for short periods of time from 1991 to 1993. The WCJ found Dr. Kovalsky's testimony to be credible and concluded that:

> During the period of time between May 1991, the date of Claimant's back surgery, and December 1993, when Dr. Kovalsky last saw Claimant, the condition of Claimant's work injury deteriorated, *and Claimant's work capabilities decreased* . . .

(WCJ's opinion at 6; Finding of Fact 15(f).) (Emphasis added.)

■ It is clear that, although Claimant did not establish total disability from all employment, unlike *Volk*, he did present competent evidence demonstrating an increase in disability from one degree of partial disability to a greater degree of partial disability. The Board erred by failing to consider whether Claimant established an increase in disability from one degree of partial disability to a greater degree of partial disability; instead, the Board focussed solely on whether or not the Claimant had established total disability.

■ Claimant did establish that his work capabilities had decreased, and he further established that the deterioration of his physical condition caused a further disability; that his partial disability had increased to the point where he was no longer capable of performing the light-duty work available to him. Therefore, the burden shifted to Employer to provide evidence of jobs available within Claimant's new physical restrictions.

■ Because Employer did not demonstrate the availability of a "lighter" light-duty position within Claimant's new physical restrictions, that is, sedentary work, Claimant's earning power was reduced to zero, and he is therefore entitled to partial disability benefits at the total disability rate. *Diffenderfer v. W.C.A.B. Rabestos Manhatten, Inc.*, 651 A.2d 1178 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 642, 659 A.2d 561 (1995). The duration of these benefits at the total disability rate is not infinite. Rather, the benefits at the total disability rate will terminate at the earlier of either the end of his remaining 500 weeks of eligibility for partial disability benefits, approximately October of 2001 (Claimant does not begin a new 500 weeks of eligibility) or the time at which Employer demonstrates that a job exists within Claimant's physical limitations. If Employer makes such a showing of job availability, Claimant will be entitled to partial disability benefits for the remainder of his period of eligibility at a rate to be determined by Claimant's earning power at that time.

Reversed and remanded to the Board for a computation of benefits in accordance with this opinion.

### *ORDER*

**AND NOW**, April 28, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed and this case is remanded for a com-

---

8. This reduction is significant given the distinct classifications of work denoted by the terms "sedentary" and "light-duty." The term "sedentary" refers to

> Exerting up to 10 pounds of force occasionally [approximately 1/3 of the time] and/or a negligible amount of force frequently [1/3 to 2/3 of the time] to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*Dictionary of Occupational Titles* 1013 (4th ed.1991). Conversely, the term "light-duty" or "light work" refers to

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly [for at least 2/3 of the time] to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*Id.*

putation of benefits in accordance with this opinion.

Jurisdiction relinquished.

SMITH, J., dissents.